[No. 6584–7–III.   Division Three.   November 7, 1985.]

COLUMBIA MORTGAGE COMPANY, *Appellant,* v. JACK C. HSIEH, ET AL, *Defendants,* MO RANKIN, ET AL, *Respondents.*

---

*Carl G. Sonderman* and *Sonderman & Egan,* for appellant.

*Orville Olson* and *Olson, Olson, Hevel & Vanderschoor,* for respondents Rankin.

*Patrick T. Roach* and *Campbell, Johnston & Roach,* for respondent Ben Franklin Transit.

MUNSON, J.—Columbia Mortgage Company appeals an order authorizing the sale of certain real property and extinguishing its security interest in the property. We affirm.

The facts are undisputed. In December 1981, defendants Jack C. Hsieh and Dorothy Hsieh, his wife, Edmund C. Hsieh and Cynthia C. Hsieh, his wife, and John G. Schultz and Penny Schultz, his wife, individually and as partners of Pacific Rim Partnership executed a promissory note payable to Columbia Mortgage Company for nearly $1½ million. As security, Pacific Rim gave Columbia a mortgage on real property located in Washington and Oregon.

Pacific Rim defaulted on the first installment; Columbia agreed to extend the terms of payment in return for additional collateral. The original note was amended; on February 15, 1983 Jack Hsieh executed a mortgage in favor of

Columbia, on additional real property designated as the "Y" property.

The "Y" property was owned by Sunland Investment Partnership and is located in an area known locally as the Richland "Y". This partnership included Jack Hsieh and his wife, Mo Rankin, Cam Lim Ma and Po Kuen Kung, his wife. Mr. Hsieh executed the "Y" mortgage without the signature of Mr. Rankin and without the authority of the Sunland partnership. Later, Mr. Hsieh and Mr. Rankin, on behalf of Sunland, entered into an "option to purchase" agreement of the "Y" property with Ben Franklin Transit.

Thereafter, Pacific Rim defaulted on the amended note. Columbia instituted a foreclosure action on all the encumbered real property, including the "Y" property. A lis pendens was recorded on the "Y" property on October 17, 1983. Two days later, Ben Franklin Transit exercised its option to purchase. In February 1984, Ben Franklin intervened in Columbia's foreclosure action as an additional party defendant and counterclaimed for damages allegedly incurred by Columbia's refusal to release its mortgage.

In March 1984, Ben Franklin moved for an order requiring the closing of the sale. The trial court, in granting the motion and authorizing the sale, determined Jack Hsieh, as a partner of Sunland, had no authority to mortgage the "Y" property for an individual debt. Ben Franklin then voluntarily dismissed its counterclaim against Columbia and it was dismissed as an additional party defendant. Columbia appeals.

This case presents an issue of first impression under Washington's Uniform Partnership Act. RCW 25.04.010–.430. Initially, Columbia contends Ben Franklin had no standing to challenge or collaterally attack the validity of the mortgage between Hsieh and Columbia. However, upon Ben Franklin's exercise of the option, it became the owner of the equitable interest in the "Y" property. 77 Am. Jur. 2d *Vendor and Purchaser* § 46 (1975). Clearly, Ben Franklin had an existing, substantial interest in the subject matter of the suit which would be affected by the relief

granted. *State ex rel. Hays v. Wilson,* 17 Wn.2d 670, 137 P.2d 105 (1943); *Bankhead v. Tacoma,* 23 Wn. App. 631, 597 P.2d 920 (1979). Ben Franklin had standing to intervene.

Columbia next argues the trial court erred, as a matter of law, in finding a partner has no authority to mortgage partnership property for an individual debt. Columbia contends its mortgage was valid and Ben Franklin, by exercising its option subsequent to the foreclosure action, is a subsequent purchaser and legally bound by Columbia's mortgage and foreclosure proceedings.

In response, Ben Franklin asserts Mr. Rankin, a partner in Sunland, did not join in executing the mortgage on the "Y" property and therefore the "Y" mortgage is void to the extent it attempts to assign specific partnership property for a personal debt.

RCW 25.04.250 provides, in pertinent part:

(1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

(2) The incidents of this tenancy are such that:

. . .

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

RCW 25.04.250 is identical to section 25 of the Uniform Partnership Act which has been interpreted in many jurisdictions. *See* Annot., 39 A.L.R.2d 1365 (1955). RCW 25.04.040(4) requires the act be construed so as "to make uniform the law of those states which enact it."

The official comment to section 25 of the Uniform Partnership Act, 6 U.L.A. 328-30 (Master ed. 1969), provides in part, as follows:

Subdivision (2-b). Clause (b) asserts that the right of a partner as co-owner in specific partnership property is not separately assignable. This peculiarity of tenancy in partnership is a necessary consequence of the partnership relation. If A and B are partners and A attempts to assign all his right in partnership property, say a particular chattel, to C, and the law recognizes the possibility

of such a transfer, C would pro tanto become a partner with B; for the rights of A in the chattel are to possess the chattel for a partnership purpose. But partnership is a voluntary relation. B cannot have a partner thrust upon him by A without his, B's, consent.

. . .

An assignment, by way of mortgage, of specific partnership property, the assignment not being an act within the power of the partner creating the mortgage, confers no rights of possession on the mortgagee. Nor can such mortgagee prevent the property from being applied to the payment of partnership debts, though thereby all the mortgagee's rights, if any, are destroyed.

(Citations omitted.)

Accordingly, where one partner makes an assignment of specific partnership property, without the consent of the other partners, such assignment is void by virtue of RCW 25.04.250(2)(b). *In re Decker,* 295 F. Supp. 501, 510 (W.D. Va. 1969), *aff'd sub nom. Woodson v. Gilmer,* 420 F.2d 378 (4th Cir.), *cert. denied,* 399 U.S. 928, 26 L. Ed. 2d 795, 90 S. Ct. 2244 (1970); *Shapiro v. United States,* 83 F. Supp. 375 (D.C. Minn.), *aff'd,* 178 F.2d 459 (8th Cir. 1949); *Carpenter v. Cornwell,* 133 Ga. App. 797, 213 S.E.2d 56 (1975); *Gold Fork Lumber Co. v. Sweany & Smith Co.,* 35 Idaho 226, 205 P. 554 (1922); *Backowski v. Solecki,* 112 Mich. App. 401, 316 N.W.2d 434 (1982); *Windom Nat'l Bank v. Klein,* 191 Minn. 447, 254 N.W. 602 (1934); *Ditzel v. Kent,* 131 Mont. 129, 308 P.2d 628 (1957); *Smithfield Oil Co. v. Furlonge,* 257 N.C. 388, 126 S.E.2d 167 (1962); *Spring Woods Bank v. Lanier,* 601 S.W.2d 425 (Tex. Civ. App. 1980); Annot., 39 A.L.R.2d 1365 (1955).

Moreover, prior to Washington's adoption of the Uniform Partnership Act in 1945, the rule was where partners are disclosed to a contracting party, and the contract is only signed by one of the partners, who contracts on his own behalf, the other partners are not bound.[1] *Alaska Pac.*

---

[1]Columbia argues, however, Mr. Rankin, the nonsigning partner, should be estopped from voiding the mortgage as an assignment of the specific partnership property. Rather, Columbia contends since Mr. Rankin did not object to the

*Salmon v. Matthewson,* 3 Wn.2d 560, 563, 101 P.2d 606 (1940). Here, the record established Mr. Rankin never consented to Mr. Hsieh's mortgage on Sunland's real property; Mr. Rankin never participated in the execution of the "Y" mortgage; Columbia knew the "Y" property was owned by Sunland, not Pacific Rim; and that Jack Hsieh's pledge of the "Y" property was security for his individual debt and the debt of Pacific Rim. On these facts, and to the extent Mr. Hsieh attempted to assign, without authority, specific partnership property, the mortgage is void.[2] It necessarily follows Columbia had no valid interest in the "Y" property; the court's order extinguishing Columbia's mortgage and closing the sale was proper. *Accord,* Uniform Partnership Act § 25, Official Comment, 6 U.L.A. 330 (1969).

---

mortgage, he consented and thus gave Mr. Hsieh authority to transfer the entire interest of the partnership. First, to the extent such an argument is based on waiver, it was not raised at trial and will not be considered for the first time on appeal. Moreover, Mr. Rankin's position as set out in his affidavit was that the "Y" mortgage was not executed pursuant to any purpose of the Sunland partnership and was without the authority of Sunland.

> Faced with a similar situation in *In re Decker, supra* at 510, the court stated:
> Most likely the silence of the other partners was due to their assumption that the deed of trust, which purported to convey only Decker's interest, in no way affected their rights in the Berkeley property. Even if we assume that the other partners were aware at that time that the land was partnership property, we cannot assume that they were aware of that legal effect of the deed of trust which Gilmer now argues. May it suffice to say that the authority of one partner to act for all will not be implied as to transfers of property not within the scope of firm business, and not for firm purposes. 2 Rowley on Partnerships § 45.3–B(2)(a) (1960).

Thus, Columbia's argument is without merit.

[2]The reason for the nonassignability by one partner alone of his specific partnership property is summarized as follows: "(1) it prevents the interference by outsiders with the conduct of partnership business and the possession, management, and disposition of partnership property; (2) partnership is a voluntary relationship—a person may not have a partner thrust upon him without his consent; (3) it is often impossible to measure a partner's beneficial interest in a specific partnership asset; (4) neither other partners nor firm creditors may be deprived of the right to have all firm assets applied to the payment of firm debts; (5) a creditor of one partner may not attach or in any way acquire a lien on specific partnership property to the exclusion of firm creditors or creditors of other partners." (Citation omitted.) Annot., 39 A.L.R.2d 1365, 1367 (1955).

The judgment is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court January 10, 1986.