742 P.2d 540

**DANIELS INSURANCE, INC., a New Mexico Corporation, and D.A. McCall, Plaintiffs-Appellees,**

v.

**DAON CORPORATION, Defendant-Appellant.**

**No. 8808.**

Court of Appeals of New Mexico.

Aug. 18, 1987.

---

Alan R. Wilson, DeLayo, Olson & Blueher, P.A., Albuquerque, for plaintiffs-appellees.

John M. Kulikowski, Margaret E. Davidson, Keleher & McLeod, P.A., Albuquerque, Howard F. Harrison, Drummy, Garrett, King & Harrison, Costa Mesa, Cal., for defendant-appellant.

## OPINION

DONNELLY, Chief Judge.

Defendant Daon, Inc., challenges on appeal the award of $788,939.00 actual damages and $75,000.00 in punitive damages against it by the trial court resulting from defendant's sale of an apartment complex and its failure to disclose that the property contained serious structural and other defects.

Defendant raises four issues on appeal: (1) whether plaintiffs were the real parties in interest to prosecute the action; (2) whether the court's findings that defendant concealed latent defects in the property were supported by substantial evidence; (3) whether there was error as to the measure of compensatory damages; and (4) whether

the award of punitive damages was proper. We remand for further proceedings.

## FACTS

In the fall of 1979, defendant, through a real estate agent, mailed advertisements to prospective purchasers, notifying them that the Casa Del Norte apartment complex in Albuquerque was listed for sale. The advertisement indicated that Professional Realty, Inc. and Jerry Stagner were handling the listing.

A copy of the advertisement was sent to plaintiff D.A. McCall. After reviewing the advertisement, McCall contacted several other individuals to discuss the feasibility of purchasing the apartments. McCall, together with Jack Daniels and Brad L. Hays, began efforts to purchase the property. In furtherance of their efforts, Casa Del Norte, Ltd. (CDN), a limited partnership, was created, consisting of D.A. McCall, individually, and Monticello Way (Monticello), a limited partnership. Monticello consisted of Brad L. Hays, Jack Daniels, Mike Tinley, and Bob Tinley.

CDN signed a contract to purchase the property from defendant for the sum of $2,400,000.00. After closing the sale on October 31, 1979, CDN discovered that before the sale, defendant had been aware of the existence of an engineering report prepared by Design Professionals, Inc., indicating that the building had serious structural damage, including problems with the concrete beams and support columns upon which the apartments were built and which could constitute a potential hazard to the safety of the occupants. The report, dated August 29, 1979, also stated that approximately $254,000.00 would be required to repair the structural deterioration.

CDN filed suit on April 29, 1982, against defendant and Fidelity National Bank, seeking, among other things, damages against defendant for misrepresentations in connection with the sale of the apartment complex. The complaint alleged that during negotiations for the sale, defendant had been in possession of the engineering report indicating serious defects in the building and that it had concealed the report from CDN.

D.A. McCall stated that he and the partnership were totally unaware of the structural defects and potentially dangerous condition of the complex until the partnership tried to sell the complex in April 1982. At that time, as alleged in the complaint, plaintiff inquired of prospective purchasers concerning the results of other inspections and learned that two other Albuquerque engineering firms inspected the property in April 1982, and found that it had serious structural damage. Thereafter, on July 28, 1982, Charles W. Volz, the chief building official for the City of Albuquerque, notified D.A. McCall that because hazardous structural conditions existed in the building, the city was requiring that the building be vacated and either demolished or repaired. Defendant denied any material misrepresentation or concealment incident to the sale.

During the pendency of the suit, CDN moved to amend its complaint to substitute as parties plaintiff, D.A. McCall and Daniels Insurance, Inc. The trial court permitted substitution of parties. McCall and Daniels Insurance informed the court that both partnerships—CDN and Monticello had been dissolved; that Monticello's partnership interest in CDN was purchased by Daniels Insurance, Inc., and that the sole remaining partners of CDN were Daniels Insurance, Inc. and D.A. McCall. Following a nonjury trial, the trial court awarded judgment in favor of plaintiffs and against the defendant.

## TRANSFER OF INTEREST

Defendant argues that the trial court erred in denying its motion to dismiss the action, entered at the close of plaintiffs' case-in-chief, and in awarding judgment to plaintiffs on the first amended complaint. Defendant asserts that the trial court's findings to the effect that plaintiffs Daniels and McCall were the proper plaintiffs in this case, were not supported by substantial evidence and were contrary to New Mexico law.

In urging its claim of error, defendant contends that the real party in interest here is CDN and not plaintiffs, and that

only CDN had a right to bring the present case. Defendant relies upon SCRA 1986, 1–017(A), which requires that every action shall be prosecuted in the name of the real party in interest. A real party in interest is one who is the owner of the right being enforced and is in a position to discharge defendant from the asserted liability. *L.R. Property Management, Inc. v. Grebe*, 96 N.M. 22, 627 P.2d 864 (1981); *Sturgeon v. Clark*, 69 N.M. 132, 364 P.2d 757 (1961). Defendant asserts that the trial court's judgment was void because plaintiffs did not own the right of action against it. Defendant also argues that there is no evidence that CDN ratified plaintiffs' action brought on behalf of CDN, and that because the assignment was void, defendant could be subjected to multiple lawsuits.

CDN, which purchased the property from defendant, was a limited partnership composed of D.A. McCall, an individual, and Monticello Way, a limited partnership. McCall and Monticello were both general and limited partners in CDN.

The trial court adopted a finding of fact determining that, "Monticello Way ... assigned all of its right, title and interest to this cause of action against Daon Corporation to Daniels Insurance, Inc., on July 20, 1983," and that, "[s]ubsequent to October 31, 1979, Casa del Norte, Ltd., transferred title to the property to the plaintiffs through a series of transactions." A copy of the assignment from Monticello to Daniels Insurance, Inc., was admitted into evidence. The trial court also adopted a conclusion of law that, "Plaintiffs and Defendant are the proper and exclusive parties in interest to this action."

Although Rule 1–017(A) controls where an interest has been transferred prior to commencement of an action, SCRA 1986, 1–025(C) becomes the applicable provision where a party commences the action but subsequently transfers its interests by assignment. *P P Inc. v. McGuire*, 509 F.Supp. 1079 (D.N.J.1981). *See generally* 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1958 (2d ed. 1986). Rule 1–025(C) states in part: "In case of any transfer of interest, the action

may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

We look to the law of partnerships to determine whether CDN effected a valid transfer of its interest in the chose of action against defendant to McCall and Daniels Insurance, Inc. Each partner is an agent of the partnership for the purposes of its business and, with certain exceptions, the partner's acts bind the partnership. *See* NMSA 1978, § 54–1–9.

Substitution of a successor in interest under Rule 1–025(C) is within the sound discretion of the trial court. *Prop-Jets, Inc. v. Chandler*, 575 F.2d 1322 (10th Cir. 1978). In *R.J. Enstrom Corp. v. Interceptor Corp.*, 555 F.2d 277 (10th Cir.1977), the court of appeals drew a distinction between a sale of assets and transfer of interest. There, the court held that the trial court had not abused its discretion in finding there was not a valid transfer of interest for Fed.R.Civ.P. 25(C) purposes and denying plaintiff's motion to join a partnership as party defendant. There, the court determined that, even though a partnership had purchased all of defendant corporation's assets, the partnership was not merely a continuation of the corporation, nor would it be liable in a property damage action for the corporation's debts; hence, the sale of assets did not constitute a valid transfer of the corporation's interests within the requirements of Rule 25(C) relating to joinder or substitution.

■ A partnership is a distinct legal entity and is expressly empowered to sue or to be sued in the name of the partnership. NMSA 1978, § 38–4–5; *see also Loucks v. Albuquerque Nat'l Bank*, 76 N.M. 735, 418 P.2d 191 (1966). Although a partner is a general agent of the partnership, *United Nuclear Corp. v. General Atomic Co.*, 90 N.M. 97, 560 P.2d 161 (1976), a partner may not sue alone on a cause of action belonging to a partnership; instead, the action must be brought in the names of all the partners. *Amador v. Lara*, 93 N.M. 571, 603 P.2d 310 (Ct.App.1979).

■ A chose in action owned by a partnership is generally subject to assignment similar to other assets of the partnership. *See* NMSA 1978, § 54-1-27. The rights of a partner in specific partnership property (including a chose in action) are not assignable except in connection with the assignment of the rights of all the partners in the same property. NMSA 1978, § 54-1-25(B)(2); *see also Benton v. Albuquerque Nat'l Bank,* 103 N.M. 5, 701 P.2d 1025 (Ct.App.1985); Annotation, *Construction, Application and Effect of Uniform Partnership Act, § 25(2)(b), Relating to Non-assignability of Partner's Right in Specific Partnership Property,* 39 A.L.R.2d 1365 (1955). Where one partner makes an assignment of partnership property without the consent of the other partners, the assignment is void. *Columbia Mortgage Co. v. Hsieh,* 42 Wash.App. 114, 708 P.2d 1226 (1985); *see also In re Decker,* 295 F.Supp. 501 (W.D.Va.1969), *cert. denied, Woodson v. Gilmer,* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 795 (1970) (one partner's right in specific partnership property cannot be assigned by the partner without the consent of all the partners).

■ Although the record before us does not specify the grounds relied upon by the trial court in determining that plaintiffs were the proper and exclusive parties, this conclusion appears premised on the finding that Monticello assigned its rights in the cause of action to Daniels Insurance, Inc. Because the written assignment, however, was not joined in or approved by D.A. McCall, the other partner of CDN, because there is no evidence that McCall assigned his interest in the lawsuit to Daniels Insurance, and because there is no evidence CDN assigned its interests in the chose of action to McCall, assignment of the cause of action to plaintiffs was not executed in connection with the assignment of the rights of all the partners in the same property and, therefore, was invalid. § 54-1-25(B)(2).

■ The fact that CDN had been dissolved and was in the process of being terminated did not ameliorate the requirements of Section 54-1-25(B)(2). A partnership is not terminated on dissolution but continues until the winding up of partnership affairs is completed. NMSA 1978, § 54-1-30. Dissolution of a partnership operates only with respect to future transactions and the partnership continues until pre-existing matters are terminated. *See Sausser v. Barrack,* 123 Cal.App.2d Supp. 948, 266 P.2d 231 (1954); *Wilzig v. Sisselman,* 182 N.J.Super. 519, 442 A.2d 1021 (1982). *Cf. In re Manning,* 37 B.R. 755 (D.Colo.1984) (upon dissolution of a Colorado general partnership, partners remain tenants in partnership pending windup and termination and the property of each partner is his undivided interest in the partnership).

■ Under Rule 1-025(C), as a matter of law, substitution of parties cannot be predicated upon the written assignment by Monticello to Daniels Insurance, Inc., in the chose of action owned by CDN, without joinder or consent of the remaining partner (McCall) in the same partnership property. Similarly, there is no evidence of an assignment by CDN of the chose in action to McCall. *See R.J. Enstrom Corp. v. Interceptor Corp.*

■ An invalid or ineffective assignment, however, may be validated by ratification. *See Purnell v. Atkinson,* 248 Ark. 401, 451 S.W.2d 734 (1970); *Haas v. United States Insulating Corp.,* 65 N.Y. S.2d 497 (1946). Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, and whereby the act is given effect as if originally authorized by him. *See Grandi v. LeSage,* 74 N.M. 799, 399 P.2d 285 (1965); *see also Black's Law Dictionary* 1428 (4th ed. 1951). *Cf. Ulibarri Landscaping Material, Inc. v. Colony Materials, Inc.,* 97 N.M. 266, 639 P.2d 75 (Ct.App.1981).[1]

---

**1.** Plaintiff asserts that irrespective of whether the assignment was valid, there was substantial evidence of ratification by CDN of the commencement of the action by the real party in interest in accordance with Rule 1-017(A). Because Rule 1-025(C), however, is the relevant provision where the interest is transferred after

The determination of whether ratification has occurred is a question of fact. *Tedco Dev. Corp. v. Overland Hills, Inc.,* 200 Neb. 748, 266 N.W.2d 56 (1978). *Cf. Stinespring v. Fields,* 139 Ga.App. 715, 229 S.E.2d 495 (1976). Even though the trial court, as a matter of law, erroneously ruled on the issue of whether an individual partner may assign an interest in specific partnership property, plaintiffs may be deemed to have been substituted as proper parties herein, if (1) there has been a ratification of Monticello's assignment to Daniels Insurance by McCall, and if (2) there had been a ratification by Monticello of McCall's rights to proceed as a plaintiff on the chose in action. *See generally* 3B *Moore's Federal Practice* § 25.03[1] at 25–27 (2d ed. 1985) (substitution is proper under Civil Procedure Rule 25 after judgment has been rendered in the trial court or upon remand from an appellate court).

Where additional findings are required, the cause may be remanded for their adoption. *State ex rel. Human Services Dep't v. Coleman,* 104 N.M. 500, 723 P.2d 971 (Ct.App.1986). Since a factual determination of whether or not ratification has occurred is a prerequisite to disposing of the other issues raised by defendant on appeal, we remand to the trial court for adoption of additional specific findings as to whether there has been, in fact, ratification of the assignment by McCall and Monticello. If ratification is found, the trial court is directed to enter an amended judgment within thirty days; if ratification is not found, the cause should be dismissed based upon a lack of prosecution by the real party or parties in interest.

IT IS SO ORDERED.

FRUMAN and APODACA, JJ., concur.

commencement of the action, we do not consider ratification in the Rule 1–017(A) context.