IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| BRIAN and KAREN HANDLIN, | ) | No. 71954-8-I |
|---|---|---|
| Appellants, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | |
| ON-SITE MANAGER, INC., | ) ) | PUBLISHED OPINION |
| Respondent. | ) ) | FILED: May 26, 2015 |
| | ) | |

BECKER, J. — The element of injury to business or property in a consumer protection action is sufficiently pleaded when a consumer reporting agency unlawfully withholds information from a person who is entitled to receive it. The plaintiffs' complaint in this matter was improperly dismissed and must be reinstated.

The plaintiffs, appellants in this matter, are Brian and Karen Handlin. Their complaint alleges that respondent On-Site Manager Inc., a consumer reporting agency, violated the Washington Fair Credit Reporting Act, chapter 19.182 RCW, and that On-Site's violations are actionable under the Consumer Protection Act, chapter 19.86 RCW. On-Site successfully moved to dismiss under CR 12(b)(6). The Handlins appeal.

Whether a complaint was properly dismissed under CR 12(b)(6) is a question of law this court reviews de novo. Tenore v. AT&T Wireless Servs., 136

Wn.2d 322, 329-30, 962 P.2d 104 (1998), cert. denied, 525 U.S. 1171 (1999). On-Site incorrectly presents its argument under the standard set for Federal Rule of Civil Procedure 12(b)(6), which requires dismissal of a complaint when plaintiffs "have not nudged their claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Our Supreme Court does not follow Twombly and Iqbal. McCurry v. Chevy Chase Bank, FSB, 169 Wn.2d 96, 101-02, 233 P.3d 861 (2010). Under CR 12(b)(6), dismissal is appropriate only if it appears beyond doubt that the plaintiffs cannot prove any set of facts which would justify recovery. Tenore, 136 Wn.2d at 329-30; McCurry, 169 Wn.2d at 101. The Handlins' allegations must be accepted as true, and a court may consider hypothetical facts not included in the record. Tenore, 136 Wn.2d at 330. CR 12(b)(6) motions should be granted sparingly and with care. Bravo v. Dolsen Cos., 125 Wn.2d 745, 750, 888 P.2d 147 (1995).

According to the complaint, the Handlins applied for tenancy at the Forestview apartment complex in Renton on August 5, 2013. Forestview collected a tenant screening fee from the Handlins and purchased consumer reports about them from On-Site. The On-Site reports gave the Handlins a low rental score (4.5 out of 10) and recommended that their application be denied. Forestview told the Handlins their application was being denied based on On-Site's recommendation.

Karen Handlin telephoned On-Site and was told that a 2008 eviction lawsuit was the main reason for the low rental score. She informed On-Site that the 2008 lawsuit had been resolved in favor of the Handlins. On-Site told her the litigation appeared to still be pending.

On August 9, 2013, Karen Handlin provided Forestview with documents showing that the 2008 eviction lawsuit had been resolved in the Handlins' favor. Forestview faxed these documents to On-Site. On-Site corrected its report to reflect that the lawsuit had been dismissed and advised Forestview of this change. However, Forestview continued to tell the Handlins that their application would not be approved, citing negative information from On-Site.

On August 13, 2013, the Handlins requested copies of their screening reports through On-Site's web site. They hoped to find out what additional negative information was responsible for Forestview's continued rejection of their application. On-Site did not respond. Three days later, the Handlins sent the request through counsel by e-mail, fax, and certified mail, accompanied by signed release-of-information forms.

Meanwhile, the Handlins began to search for another apartment. They found one on August 21, 2013, that was not as suitable for them as Forestview would have been. But with less than two weeks remaining on their then-current lease, time was of the essence. They signed a lease, paid a $250 deposit, and began moving that same day. The next day, the Handlins learned that Forestview would accept their application if they agreed to pay an increased security deposit.

On August 24, 2013, the Handlins' attorney received a letter from On-Site stating that the requested reports would not be produced until the Handlins submitted identification. Although the Handlins were no longer in a position to pursue housing at Forestview, they were still interested in seeing their tenant screening reports. On August 26, 2013, they faxed copies of their driver's licenses to On-Site. The next day, On-Site sent copies of the screening reports to the Handlins by mail, which they received on August 30, 2013. The material sent to the Handlins did not include their rental scores or On-Site's tenancy recommendation. Certain mandatory disclosures about the Handlins' Fair Credit Reporting Act rights and remedies were also omitted.

The Fair Credit Reporting Act requires a consumer reporting agency to make certain disclosures upon request from a consumer. If a reporting agency receives a request from a consumer, it must disclose all information in its files on that consumer, identify the sources of that information, and identify all persons who sought or obtained a consumer report about that consumer within the preceding six months. See RCW 19.182.070. If the consumer reporting agency calculates a credit score, then it must also provide an explanation of the meaning of the credit score. RCW 19.182.080(5). The disclosures must be provided "on reasonable notice," and by any "reasonable means that are available to the consumer reporting agency if that means is authorized by the consumer." RCW 19.182.080(1), (2)(c). With each written disclosure, the consumer reporting agency must provide the consumer with "a written summary of all rights and remedies the consumer has under this chapter." RCW 19.182.080(7)(a).

The complaint alleges that On-Site violated the provisions cited above by unreasonably delaying the disclosure of the requested information and omitting some of the materials the Handlins were entitled to receive. These acts are alleged to be actionable as per se violations of the Consumer Protection Act. RCW 19.86.020, .090; see also RCW 19.182.150. The complaint states the Handlins are entitled to damages and injunctive relief due to the "economic and non-economic injuries" they suffered "as a direct and proximate result" of On-Site's violations of the Consumer Protection Act.

The Consumer Protection Act provides a private right of action for litigants to redress unfair or deceptive acts or practices that occur in trade or commerce. RCW 19.86.020. To prevail, consumer protection plaintiffs must establish five distinct elements: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) causes injury to the plaintiff in his or her business or property, and (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

The first two elements may be established by showing that the alleged act constitutes a per se unfair trade practice. A per se unfair trade practice exists when the defendant has violated a statute which has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce. Hangman Ridge, 105 Wn.2d at 785-87. The public interest element may also be satisfied per se by "showing that a statute has been violated which contains a specific legislative declaration of public interest impact." Hangman Ridge, 105 Wn.2d at 791. Washington's Fair Credit Reporting Act is such a statute. It

5

contains a legislative finding "that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW," and it declares that a violation is an unfair and deceptive act or practice in trade or commerce:

> Violations of this chapter are not reasonable in relation to the development and preservation of business. A violation of this chapter is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW. The burden of proof in an action alleging a violation of this chapter shall be by a preponderance of the evidence, and the applicable statute of limitation shall be as set forth in RCW 19.182.120. For purposes of a judgment awarded pursuant to an action by a consumer under chapter 19.86 RCW, the consumer shall be awarded actual damages and costs of the action together with reasonable attorney's fees as determined by the court. However, where there has been willful failure to comply with any requirement imposed under this chapter, the consumer shall be awarded actual damages, a monetary penalty of one thousand dollars, and the costs of the action together with reasonable attorneys' fees as determined by the court.

RCW 19.182.150.

On-Site does not dispute that the Handlins' complaint sufficiently pleads the first three elements of a consumer protection cause of action. On-Site's argument is directed at the last two elements, injury and causation.

At the outset, we reject On-Site's argument that the complaint was insufficient because it did not specifically allege "actual damages," a term used in RCW 19.182.150, the section quoted above. The Fair Credit Reporting Act is designed so that violations can be enforced as a consumer protection violation. There are five elements to a consumer protection act claim. Actual damages is not one of them. Under the Consumer Protection Act, "injury" is broader than

6

"damages." Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 58, 204 P.3d 885 (2009). "Monetary damages need not be proved; unquantifiable damages may suffice." Panag, 166 Wn.2d at 58; accord Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990). "The failure to show actual monetary damages only precludes the recovery of treble damages. It does not act as a complete bar to a recovery." St. Paul Fire & Marine Ins. Co. v. Updegrave, 33 Wn. App. 653, 660, 656 P.2d 1130 (1983).

The central question here is whether the complaint sufficiently alleges an injury to business or property caused by On-Site's violations. The trial court recognized that On-Site's report to Forestview caused Forestview to delay offering the Handlins tenancy until it was too late for them to accept it. As a result of Forestview's initial decision to deny their application, the Handlins did not get the apartment they wanted and they incurred expense and inconvenience finding another apartment before their lease ran out. But as the trial court saw it, their complaint did not allege that the situation with Forestview would have been resolved differently if On-Site had responded more promptly and completely to the request for tenant screening information. The court dismissed "on the basis that the plaintiffs have not alleged an actual injury."

An injury to property occurs when one's right to possess, use, or enjoy a determinate thing has been affected in the slightest degree. Ambach v. French, 167 Wn.2d 167, 172, 216 P.3d 405 (2009). A sufficient injury is therefore pleaded if a plaintiff alleges that she was deprived of the use of her property for even a short amount of time. Sorrel v. Eagle Healthcare, Inc., 110 Wn. App. 290, 298-

99, 38 P.3d 1024, <u>review denied</u>, 147 Wn.2d 1016 (2002). The Handlins argue that the consumer disclosures mandated by the act are a form of property.

On-Site points out that the Washington Fair Credit Reporting Act does not say that the consumer reporting agency must disclose copies of actual *reports*; it commands disclosure of all "items of information" in the agency's files on that consumer. RCW 19.182.070(2) ("Disclosures to consumer"). According to On-Site, the complaint is fatally defective because the violation alleged by the Handlins was a failure to send them copies of their tenant screening reports, their tenant scores, and On-Site's recommendation to Forestview. On-Site claims these reports are not property because they are not physically stored in the Handlins' file. This hypertechnical argument cannot sustain dismissal given Washington's liberal standard under CR 12(b)(6) and the mandate for liberal construction of the Consumer Protection Act. When a consumer reporting agency assembles information about a consumer's creditworthiness to sell to landlords like Forestview, the information has commercial utility for the consumer as well as for landlords. <u>See</u> RCW 19.182.005 (legislature declares "that consumers have a vital interest in establishing and maintaining creditworthiness.") The Fair Credit Reporting Act is designed to benefit consumers by giving them the same right of access to their credit information as is available to landlords, employers, or others who are evaluating their creditworthiness. The format in which the information is stored and disclosed is not material to the plaintiffs' pleading obligations under CR 12(b)(6).

The Handlins had a right to use and possess information in On-Site's files. On-Site's alleged violations of the Fair Credit Reporting Act deprived the Handlins of their right to obtain information that has commercial utility for them. Their complaint sufficiently alleges that On-Site's unfair trade practice caused them an actionable "injury" to "property" in the sense that those terms are used in the Consumer Protection Act. See Ambach, 167 Wn.2d at 172-77.

In addition to damages and an award of attorney fees and costs, the complaint requested several forms of injunctive relief against On-Site under RCW 19.182.150 and RCW 19.86.090:

> a. An order commanding On-Site to produce complete copies of the Handlins' screening reports, including all rental scores, recommendations, and all other disclosures required by law;
> b. An order commanding On-Site to cease and desist from violating RCW 19.182.070 and .080 by failing to provide full and complete consumer disclosures when requested by a consumer;
> c. An order commanding On-Site to cease and desist from violating RCW 19.182.080 by failing to provide consumer disclosures by e-mail or fax when requested by e-mail or fax;
> d. An order commanding On-Site to cease and desist from violating RCW 19.182.080 by failing to make consumer disclosures promptly upon receiving a consumer's request for disclosures;
> e. An order commanding On-Site to cease and desist from violating RCW 19.182.090 by failing to make all required disclosures promptly upon completing a reinvestigation of disputed information.

On-Site contends that the requests for injunctive relief must be dismissed because the Washington Fair Credit Reporting Act does not expressly list injunctive relief as a remedy. This argument lacks merit. The statute states that violations of the Fair Credit Reporting Act are to be pleaded under the Consumer Protection Act. RCW 19.182.150. And the Consumer Protection Act does

authorize injunctive relief. <u>Scott v. Cingular Wireless</u>, 160 Wn.2d 843, 853, 161 P.3d 1000 (2007) ("Consumers bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests.")

On-Site also argues that the authority to grant injunctive relief against a credit reporting agency belongs exclusively to the Federal Trade Commission. If the Handlins prevail, their request for an order commanding On-Site to produce information concerning them could not possibly interfere with federal law. It is also difficult to see how the simple cease and desist orders requested by the Handlins would subvert federal regulatory interests either as a matter of federal preemption or under RCW 19.86.170. More likely, such orders would complement federal regulation. We decline to hold that the injunctive relief requested should be dismissed as a matter of law. The trial court can decide issues related to injunctive relief in due course.

On-Site's request for an award of attorney fees is denied.

Reversed and remanded for reinstatement of the complaint.

Becker, J.

WE CONCUR:

Trickey, J.